NOT DESIGNATED FOR PUBLICATION

No. 119,882

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.H.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed March 8, 2019. Affirmed.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.

PER CURIAM: When a person fails to appear and defend his or her position in a legal action, the party may be found to be in default and have a judgment rendered against him or her. K.S.A. 2018 Supp. 60-255(a). Once a default judgment has been entered, the person may appear and ask the court to set aside the default finding based on mistake or excusable neglect, misrepresentations by an opposing party, or any other reason that justifies granting relief from the judgment. K.S.A. 2018 Supp. 60-255(b); K.S.A. 2018 Supp. 60-260(b)(1), (3), (6). If the judge denies a motion to set aside default judgment, we review the case to determine whether the judge abused his or her discretion in failing to set aside the judgment. *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, Syl. ¶ 1, 216 P.3d 158 (2009).

1

When Father failed to appear in an action concerning the termination of his parental rights, the State requested that default judgment be entered against him and his rights be terminated. The court granted the State's request. Father filed a motion asking the court to set aside the default judgment claiming that he was under the impression he did not need to be at the hearing and that he was ill. After a hearing, the court denied Father's motion. Because we are unable to find that the district court abused its discretion in denying Father's motion, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In May 2016, the State filed a child in need of care (CINC) petition regarding D.H. against Mother and Father. D.H., who was only four months old at the time, was located residing with Mother and a one-year-old half-sibling, who is not involved in this appeal. Police had been called to the residence on a "welfare check and a disturbance call." Mother had outstanding warrants for her arrest and was taken into custody. The apartment was filthy with trash covering the floor. A mouse ran over the feet of one of the police officers. D.H. was filthy and her diaper was full. She had severe diaper rash with red open sores and bleeding, as well as a neck rash. An officer describer her diaper as "'fully loaded'" and it almost fell apart while being changed. The apartment smelled of urine and D.H. appeared to be undernourished—smaller than would be expected for her age, still wearing a size 1 diaper.

Mother identified the person who fathered D.H. She indicated that he had been around to see D.H. about three times since D.H.'s birth. She stated that Father threatened her that if a paternity test revealed he was the father and she sought child support he would get full custody of D.H. and prevent Mother from seeing D.H. She claims that Father told her that the only way she would be able to see D.H. was if she had sex with him. She said Father believes that if D.H. is his, then Mother is his. When she told D.H.

2

she was not going to have sex with him anymore, he threatened her and stopped coming around.

When the Department for Children and Families (DCF) personnel spoke to Father, he indicated that he did know Mother and he did know D.H., but he did not believe he was D.H.'s father. Father agreed to appear at the temporary custody hearing. Once there, he waived his right to an evidentiary hearing on the issue of temporary custody. Father was not willing to complete any orders, including visitation with D.H., for two stated reasons. First, it had not yet been determined by paternity testing that he was D.H.'s father. Second, he had already experienced the rehabilitation process with his other children and had been deemed fit to care for them. He stated that he hoped he was not D.H.'s father, but if he was he would do what was required to be a father.

A little over a month after D.H. was removed from Mother, a paternity test confirmed that Father was D.H.'s father. As pertinent to this appeal, Father was required to obtain a mental health assessment; maintain full time employment and provide proof of income; and complete both parenting classes and an anger management program.

The district court held a permanency hearing in September 2016. Father did not appear in person at the hearing, although his attorney was present. The court found that Father was not "fully cooperating with [St. Francis Community Services] SFCS and does not want to do court orders." But the court noted that Father was participating in visitations and the visitations were going well. The court ordered Father to submit to a clinical interview and assessment which would address anger management, domestic violence, and his history of arrests and criminal activity. The court also ordered that Father's significant other, who would be babysitting D.H., submit to background checks.

In October 2016, SFCS personnel met with Father and completed a permanency plan. The plan required Father to: (1) provide a safe and stable environment for D.H. to

ensure her needs were met all the time; (2) obtain and maintain full time employment and provide proof of income; (3) obtain and maintain appropriate housing; (4) engage in visitations; and (5) provide proof of citizenship.

A month later, SFCS held a permanency meeting where a reintegration plan was created with the goal of reintegrating D.H. with Father by Christmas. Reintegration did not occur because of a lack of progress.

In December 2016, a permanency hearing occurred. Father was present at the hearing. The court ordered Father to actively participate in individual counseling addressing his anger management, domestic violence, and criminal activity. Father was asked after the hearing if he needed a referral for a therapist. Father said that he had a friend who was a therapist that he would visit. Father did not give SFCS personnel the friend's contact information when requested. While D.H. was visiting Father, case workers visited and noticed that unauthorized individuals were also present at the visits. SFCS informed Father that no one else should be present at the visits, especially without a background check. Father was otherwise appropriately attending all visitations.

In February 2017, SFCS contacted Father and told him that weekend visitations would not continue. Father was upset and explained that he had work and school during the week and could not visit D.H. during the evenings. Father was asked what he would do if D.H. lived with him and he was not home in the evenings. Father said that his sister would provide daycare in the evenings. Father was told that his sister would not be considered an appropriate caregiver until she completed a background check. One was not completed and Father stopped all visitation when the new schedule was put in place.

In March 2017, now a full year after D.H. was removed from the home, the court held another permanency hearing. Father did not appear in person at the hearing, although his attorney was present. The court ordered Father to provide SFCS with a

childcare plan which included the information of all people providing care for D.H. so that SFCS could complete background checks. The court also ordered Father to continue therapy and to provide monthly proof of income to SFCS.

In May 2017, SFCS held another permanency meeting. At the meeting SFCS discussed Father's failure to make time to visit D.H. and his failure to provide information on the unauthorized people in his home so that background checks could be completed. SFCS believed that these unauthorized people cared for Father's other children when he was not home.

Yet another permanency hearing was held in June 2017. Again, Father was not present in person at the hearing, although his attorney was present. At the hearing, the court found that Father had no visits with D.H. since February 2017. The court ordered Father to provide proof of employment, school attendance, and immigration status to SFCS. The court also ordered Father to attend all medical appointments for D.H. Moreover, the court ordered the State to file a motion to terminate the parental rights of the parents.

The State moved to terminate parental rights alleging that Father was an unfit parent and would remain unfit for the foreseeable future. Father did not appear in person at the October 2017 review hearing, although his attorney was present. The court scheduled a termination hearing for February 2018. Father was scheduled to visit D.H. in November 2017 but he did not appear. When SFCS discussed possible December 2017 visitation times with Father he refused to schedule a visit.

*Father fails to appear at termination hearing.*

Almost two years after D.H. was removed from the home, a termination hearing was scheduled for February 2018. Father failed to appear in person. The State informed

the court that notice was sent to Father at his residence. SFCS recommended that the court review the case and continue the hearing to a later date because Mother and Father were making progress. The State told the court that Mother was making a lot of progress toward reintegration, but the State was mostly silent about Father's progress or lack thereof. The only thing the State said about Father's progress was that he continued to be argumentative about his visitation schedule and that he had obtained a valid green card.

Father's attorney told the court that she had not had contact with her client. She did note that Father signed a reintegration plan so he had contact with SFCS at some point. The court then asked if the State "really want[ed] to include [Father] as a reintegrative source?" After the State answered in the negative, the court made "a finding that he's not—reintegration with Father is not viable. He is just simply noncooperative, and we have had problems with him in other cases." The State requested that the court terminate Father's parental rights.

The court granted the State's request. The court adopted the "State's motion for unfitness as it relates to Father for the statutory reasons set out in the State's motion as to Father." The court also found it "in the child's best interest[s] that [Father's] rights be terminated." In its written order, the court noted that the parties stipulated to the evidence offered by the State. The court found that Father was unfit by reason of conduct or condition and the conduct or condition was unlikely to change in the foreseeable future due to: (1) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family; (2) lack of effort on Father's part to adjust his circumstances, conduct, or conditions to meet the needs of D.H.; (3) failure to maintain regular visitation, contact, or communication with D.H.; and (4) failure to carry out a reasonable plan approved by the court directed toward the integration of D.H. into Father's home.

*District court denies Father's motion to set aside the default judgment.*

Father's attorney moved to set aside the default judgment 22 days after the hearing. According to the motion, a week before the February 2018 hearing, Father met with a SFCS employee who told him that SFCS was going to request additional time for the parents to work court orders. Based on that conversation, Father believed that he did not need to go to the February 2018 hearing. Father also argued that he was ill and at the doctor's office at the same time as the hearing.

The court held a hearing on Father's motion in early April 2018. The State proffered that the SFCS employee, who was present, would testify that she told Mother and Father the same information, separately, and informed them that there was no way to know what the court would do at the February 2018 hearing. The State proffered that the employee did not tell Father that he did not need to appear at the hearing. The State pointed out that SFCS gave Mother the same information and Mother was present at the February 2018 hearing. As for Father's sickness, his attorney testified that Father was "ill enough [she] didn't want him sitting in [her] office." But the State noted that the doctor's note Father offered as evidence was dated for the day *before* the hearing, so he could not have been at the doctor the day of the hearing as he alleged. The district court denied Father's motion. Father appeals.

## ANALYSIS

Father appeals the denial of his motion to set aside the default judgment.

A district court "may set aside a final default judgment under K.S.A. 60-260(b) and 60-309." K.S.A. 2018 Supp. 60-255(b). Under K.S.A. 2018 Supp. 60-260(b)(1) and (6) the district court may set aside a final judgment due to "[m]istake, inadvertence, surprise or excusable neglect" or for "any other reason that justifies relief." The denial of

7

a motion to set aside default judgment is reviewed for an abuse of discretion. *Landmark Nat'l Bank*, 289 Kan. 528, Syl. ¶ 1. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Father does not argue that the district court made a mistake of law or mistake of fact by denying his motion. Instead, his arguments center on the idea that the district court's decision was unreasonable.

*The district court's decision to deny Father's motion to set aside the default judgment was not unreasonable.*

We find that the district court's decision was not unreasonable under the circumstances. Father contended that he was not present at the hearing because he thought he did not need to go and because he was sick. The district court did not find Father's reasons persuasive and did not grant his motion to set aside the default judgment. Although the district court did not explain its reasoning, Father did not request specific findings. When there is no objection to inadequate findings of fact, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015).

Father's first reason for missing the hearing, his belief that he need not attend, was unpersuasive because SFCS gave the same information to Mother and she attended the termination hearing. And as discussed above, Father had a history of not attending hearings in person. Given Father's history it was reasonable for the court to find that his first reason for missing the hearing did not qualify as "[m]istake, inadvertence, surprise or excusable neglect," nor misrepresentation by the State. See K.S.A. 2018 Supp. 60-260(b)(1), (3). Nor was it unreasonable for the district court to decide that Father's reason

8

did not qualify as "any other reason that justifies relief." See K.S.A. 2018 Supp. 60-260(b)(6).

His second reason, that he was extremely ill, was also unpersuasive. The evidence shows that Father was ill. But his assertion that he was at the doctor's office the morning of the hearing was unpersuasive because the doctor's note was signed the day *before* the hearing. Father did not contact his attorney before the hearing to let her know that he was sick. And Father was well enough to go to the courthouse and his attorney's office once he learned that his parental rights had been terminated. Even if we may have decided it differently, given the evidence that Father often missed hearings, was unwilling to make changes, and unwilling to work his reintegration plan, we conclude that a reasonable person could have made the same decision the district court made.

The district court's decision to deny Father's motion to set aside the default judgment was not an abuse of discretion. Father does not argue that the court's decision was made due to a mistake of law or mistake of fact, his allegation of misrepresentation was unsupported, and we are unable to find that no reasonable person would take the view adopted by the trial court.

*There was sufficient evidence to support the default judgment.*

Although Father does not explicitly challenge the district court's basis to enter the default judgment against him, we have no problem finding that the evidence was sufficient to enter a judgment finding that Father's parental rights should be terminated.

To show that the State was entitled to a default judgment against Father, the State was required to prove that Father was an unfit parent as defined by K.S.A. 2018 Supp. 38-2269. In reviewing the termination decision, this court considers all the evidence in the light most favorable to the State, to decide whether "we are convinced that a rational

9

factfinder could have found it highly probable, *i.e.* by clear and convincing evidence, that the parent's right should be terminated." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

The district court shall consider certain nonexclusive factors when determining whether a parent is unfit. K.S.A. 2018 Supp. 38-2269(b), (c). Any one of the factors in K.S.A. 2018 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2018 Supp. 38-2269(f).

The district court found that Father was an unfit parent due to: (1) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family; (2) lack of effort on Father's part to adjust his circumstances, conduct or conditions to meet the needs of D.H.; (3) failure to maintain regular visitation, contact, or communication with D.H.; and (4) failure to carry out a reasonable plan approved by the court directed toward the integration of D.H. into Father's home. See K.S.A. 2018 Supp. 38-2269(b)(7), (b)(8), (c)(2), (c)(3). After reviewing the evidence in a light most favorable to the State, we conclude that a rational fact-finder could have found it highly probable that Father's parental rights should be terminated. See 45 Kan. App. 2d at 354.

Over a period of several months, Father was uncooperative with rehabilitative services and unwilling to make the changes necessary to be a father to D.H. He had previously missed several hearings. He refused to have other caregivers go through background checks as required by SFCS. He also refused to make time for visitations with D.H. Instead, when offered alternative times he refused to schedule visits. The evidence shows that (1) SFCS made reasonable efforts which failed to rehabilitate the family; (2) Father did not attempt to adjust his circumstances, conduct, or conditions to meet D.H.'s needs; (3) Father made no effort to maintain visitation, contact, or communication with D.H.; and (4) Father failed to work the plan for reintegration approved by the court. Accordingly, there was sufficient evidence to support the

10

termination of Father's parental rights. In addition, the district court's finding that the termination was in the child's best interests was supported by a preponderance of the evidence. K.S.A. 2018 Supp. 38-2269(g)(1).

Affirmed.